BENCHMARK COMPUTER SYSTEMS, INC., et al., Plaintiffs,

v.

Richard W. LONDON, Defendant and Third Party Plaintiff, Respondent,

v.

INTERNATIONAL COMPUTER DISTRIBUTORS, INC., et al., Third Party Defendants, Petitioners, Appellants.

No. C1–87–1505.

Court of Appeals of Minnesota.

Jan. 12, 1988.

Frank R. Berman, Scott Harris, Geri L. Napuck, Minneapolis, for respondent.

Thomas W. Wexler, Minneapolis, for appellants.

Heard, considered and decided by NIERENGARTEN, P.J., and LANSING and FORSBERG, JJ.

## OPINION

LANSING, Judge.

Richard London, the defendant in an action brought by his former employer, brought a third-party complaint against International Computer Distributors, Inc. (ICD), and Joseph D. Mooney, a Minnesota resident who was ICD's former chief executive officer. The third-party complaint against ICD was served in Minnesota on Mooney, who moved to quash service on ICD. Mooney and ICD appeal the denial of the motion to quash.

### FACTS

Richard London was employed as the president of Benchmark Computer Systems, Inc. Under their employment agreement, 15 percent of the outstanding shares of Benchmark stock were transferred to London, with title to one-third of those shares irrevocably vesting upon transfer and title to the remaining shares vesting at specified dates in the future. If London left his employment or was terminated, he would forfeit all shares that had not vested. Benchmark alleges that in 1985, when London left his employment, two-thirds of the shares had not yet vested.

In December 1984, while London was president, Benchmark entered into an agreement with a number of computer distributors that transferred all of the stock of the individual distributors to a newly created Delaware corporation, ICD, in return for shares of ICD. London's shares in Benchmark were transferred to ICD pursuant to the agreement.

In December 1985 the shareholders of ICD terminated ICD by signing rescission agreements, cross-receipts and stock powers. Benchmark's complaint alleges that London failed to provide the necessary releases and that this noncooperation caused irreparable damage to Benchmark's business. ICD's corporate charter became inoperative in March 1986 because it did not pay franchise taxes.

London's third-party complaint against ICD and Joseph Mooney alleges breach of contract for failure to deliver London's shares of ICD, fraud and securities law violations. A summons and complaint was served on Mooney individually and in his capacity as an ICD officer. Mooney moved to quash service on ICD, arguing that the revocation of ICD's corporate status terminated Mooney's agency relationship with ICD.

### ISSUE

Was service of the summons and complaint on Mooney sufficient to obtain jurisdiction over ICD?

### ANALYSIS

London initially argues that this appeal is moot because the Delaware Secretary of State was served on October 15, 1987. Although appellants admit that such service is sufficient to obtain jurisdiction over ICD, they assert that the appeal is not moot, because a third-party complaint served more than 90 days after service of the original summons requires court approval, which has not been obtained. *See* Minn.R. Civ.P. 14.01. The record is unclear on when the original complaint was served, but it appears to have been served more than 90 days before service of the third-party complaint on the Delaware Secretary of State. Because the record is not conclusive on the question of mootness, we decide the appeal on its merits.

Service of a summons and complaint may be made

[u]pon a * * * foreign corporation, by delivering a copy to an officer or managing agent, or to any other agent authorized expressly or impliedly or designated by statute to receive service * * *.

Minn.R.Civ.P. 4.03(c). Appellants admit that ICD continues to exist for purposes of defending suits for three years after its termination, Del.Code Ann. tit. 8, § 278, but argue that service on Mooney was insufficient to obtain jurisdiction over ICD, because Mooney had ceased acting on behalf of ICD in any capacity at the time he was served.

■ Jurisdiction over a dissolving Minnesota corporation is obtained through service on the secretary of state or the corporation's trustee in dissolution. *Mississippi Valley Development Corp. v. Colonial Enterprises, Inc.*; 300 Minn. 66, 70, 217 N.W.2d 760, 763 (1974). Service on a former agent of a dissolved Minnesota corporation has been held insufficient because an agent whose responsibilities have terminated might not ensure that the corporation is apprised of the pendency of the action. *Kopio's, Inc. v. Bridgeman Creameries, Inc.*, 248 Minn. 348, 355, 79 N.W.2d 921, 926 (1956). In addition, under Minnesota law, a resolution for dissolution terminates the authority of corporate officers except insofar as that authority was continued by the trustee in dissolution. *Id.* at 356, 79 N.W.2d at 926–27 n. 20.[1]

Appellants argue that *Mississippi Valley* and *Kopio's* control and require service of process on the Delaware secretary of state where, as here, no trustee in dissolution has been appointed. However, the automatic application of these holdings to foreign corporations ignores the rule's rationale. *Cf. Warembourg v. Chickasha Mobile Homes, Inc.*, 326 N.W.2d 16, 18 (Minn. 1982) (analogy between service on dissolved foreign corporation and service on dissolved domestic corporations "inappropriate").

In Minnesota, service on officers or agents of dissolved corporations is insuffi-

cient because, under Minnesota law, the officers' or agents' authority is transferred to a trustee upon the filing of a certificate of dissolution, and the trustee can receive service of process. Delaware law does not require the appointment of a trustee or provide for the termination of the authority of corporate officers upon the adoption of a resolution of dissolution.

■ Under Delaware law, a corporation's existence continues unmodified for three years while its officers and directors wind up its affairs unless application is made for the appointment of a trustee or receiver. *See* Del.Code Ann. tit. 8, §§ 278, 279; *cf. Addy and Errett v. Short*, 47 Del. (8 Terry) 157, 163, 89 A.2d 136, 139 (1952) (during three-year dissolution period, corporation functions exactly as before dissolution); *In re Citadel Industries, Inc.*, 423 A.2d 500, 504–05 (Del. Ch. 1980) (section 278 contemplates three-year period during which officers and directors wind up corporate affairs); *Lone Star Industries, Inc. v. Redwine*, 757 F.2d 1544, 1549 (5th Cir.1985) (corporation itself may conduct winding up, presumably through its officers and directors). Thus, the authority of Delaware corporate officers continues after dissolution unless a trustee or receiver is appointed, and service on such officers is therefore sufficient to establish jurisdiction over the corporation. *Cf. International Pulp Equipment Co. v. St. Regis Kraft Co.*, 54 F.Supp. 745, 747–48 (D.Del.1944) (rejecting argument that trustee must be appointed before suit can be brought because officers retain no power to act for dissolved corporation).

Delaware law also distinguishes between corporations terminated for nonpayment of franchise taxes and those legally dissolved. A corporation terminated for non-payment of taxes

> is not completely dead. It is in a state of coma from which it can be easily resuscitated [and it] still can serve as repository of title and as obligor of a debt.

---

**1.** Because the new Minnesota Business Corporation Act, Minn.Stat. §§ 302A.001–302A.901, does not provide for continuing corporate existence after dissolution, *Kopio's* and its progeny are "no longer relevant" to service on corporations governed by the new act. Minn.Stat.Ann. § 302A.733, Reporter's Notes—1981 (West 1985). Claims made after dissolution must be made against and served on officers, directors or shareholders individually.

*Wax v. Riverview Cemetery Co.,* 41 Del. (2 Terry) 424, 436, 24 A.2d 431, 436 (Super.Ct. 1942). This distinction has been criticized as "questionable," *Ross v. Venezuelan–American Independent Oil Producers Association, Inc.,* 230 F.Supp. 701, 704 (D.Del.1964), but is still followed. *See United States v. Northeastern Pharmaceutical & Chemical Co., Inc.,* 810 F.2d 726, 746–47 (8th Cir.1986) (corporation could be sued more than three years after its charter had been forfeited because no certificate of dissolution was ever filed).

This distinction is further supported by a Delaware Supreme Court ruling that a contract entered into by the president of a corporation whose charter has been forfeited is binding on the corporation after its revival. *Frederic G. Krapf & Son, Inc. v. Gorson,* 243 A.2d 713, 715 (Del.1968). If the officer of a corporation terminated for nonpayment of taxes retains the authority to enter into a contract on behalf of the corporation, such an officer should also be competent to receive service of process on behalf of the corporation.

For these reasons, we conclude that Mooney retained sufficient authority to receive service of process for ICD. The rationale of the Minnesota rules relating to service of process is that "service be limited to those who could reasonably be expected to apprise the corporation of the service and pendency of the action." *Warembourg,* 326 N.W.2d at 18 (citing *Kopio's,* 248 Minn. at 355, 79 N.W.2d at 926). Because service on Mooney satisfies that rationale, and because the restrictions imposed by *Kopio's* and its progeny are based on Minnesota corporations statutes that differed significantly from their current Delaware counterparts, the motion to quash was properly denied.

### DECISION

The motion to quash service was properly denied.

Affirmed.